COUNTIES: OFFICERS: COMPENSATION: County may not provide car allowance subsidizing personal use of automobile in addition to maximum authorized salary; authorized vacation leave is not considered severance pay. Minn. Stat. §§ 43A.17, subd. 9, 465.722; 471.665.

(Cr. ref. 104a-8)

December 28, 1994

Michael O. Freeman
Hennepin County Attorney
2000 Government Center
Minneapolis, Minnesota 55487

Dear Mr. Freeman:

In your communications with the Office of the Attorney General you provide substantially the following:

## FACTS

In a recent audit, the Minnesota State Auditor has taken issue with certain aspects of the compensation package provided to the Hennepin County Administrator pursuant to the employment agreement executed on June 7, 1993. That agreement provides for an annual salary equal to 95 percent of the Governor's salary, which is the maximum salary generally permitted for persons employed by local units of government. See Minn. Stat. § 43A.17, subd. 9 (Supp. 1993). In addition to salary, the agreement provides for $600 per month as an "automobile allowance," in accordance with Article IV of the contract which provides:

> The County Administrator shall receive a mileage allowance for the acquisition cost, insurance, maintenance and operation of an automobile in an amount to be approved by the County Board Chair.

The amount of $600.00 per month was apparently subsequently approved by the Board Chair. See June 29, 1993 Memorandum of James Bourey to Mark Andrew. The Board expects the administrator to be able to respond to any need or crisis within the county at any time. The allowance was provided in lieu of providing a county-owned automobile due to severe restrictions imposed upon the use of publicly-owned vehicles by Minn. Stat. § 471.666 (Supp. 1993).

The auditor has also questioned the provisions of Articles II and III of the contract which grant to the administrator initial vacation and sick leave balances of 1,093 hours and 800 hours respectively. In addition, the administrator accrues

vacation leave at the rate of 4 weeks annually to a maximum of 1,520 hours, and sick leave at the rate of 12 days annually. Article VIII of the contract provides for a "termination allowance" of up to 800 hours as permitted for other employees in the unclassified service of the county. See also Minn. Stat. § 383B.103 (1992)(administrator's termination allowance equal to unclassified employees). The contract also permits the administrator to use up to a maximum of 1,520 hours of accumulated vacation leave prior to actual termination. The auditor takes the position that the effect of these contract provisions is contrary to terms of Minn. Stat. § 465.722 (Supp. 1993) which generally restricts the amount of "severance pay" for "highly compensated" employees to an amount equivalent to six-month's wages. The auditor notes that the section permits "accumulated vacation" to be paid to highly compensated employees in addition to severance. However, the auditor observes that the concept of "accumulated" vacation does not contemplate establishment of an initial balance and "instantly creating amounts to be paid at termination" in excess of the six-month's severance permitted by law.[1] Minn. Stat. § 465.722 (Supp. 1993) became effective on August 1, 1993 after the contract was entered on June 7, 1993.

You then ask substantially the following questions:

## QUESTION ONE

Did the Hennepin County Board of Commissioners act within its authority in granting the automobile allowance, in light of its determination that use of an automobile on a 24-hour basis is directly related to the performance of the county administrator's job?

## OPINION

While a complete answer to this question is, to a certain extent, dependent upon resolution of factual issues which are beyond the scope of opinions of this office, it appears, from the material supplied, that the automobile allowance in question exceeds the authority of the Board.

Minn. Stat. § 43A.17, subd. 9 (1992) provided in part:

> The salary of a person employed by a statutory or home rule charter city, county, town, school district, metropolitan or regional agency, or other political subdivision of this state, or employed under section 422A.03, may not exceed

---

1. We note, however, that the agreement provides that these initial balances are not available for inclusion in the termination payment if termination occurs in the first year of employment

95 percent of the salary of the governor as set under section 15A.082, except as provided in this subdivision.

"Salary" as defined by section 43A.17, subd. 1, means:

"hourly, monthly, or annual rate of pay, including any lump-sum payments and cost-of-living adjustment increases. . . .

In 1993 section 43A.17, subd. 9 was amended to read in part as follows:

Subd. 9. Political subdivision compensation limit. The salary and the value of all other forms of compensation of a person employed by a statutory or home rule charter city, county, town, school district, metropolitan or regional agency, or other political subdivision of this state, or employed under section 422A.03, may not exceed 95 percent of the salary of the governor as set under section 15A.082, except as provided in this subdivision. Deferred compensation and payroll allocations to purchase an individual annuity contract for an employee are included in determining the employee's salary. Other forms of compensation which shall be included to determine an employee's total compensation are all other direct and indirect items of compensation which are not specifically excluded by this subdivision. Other forms of compensation which shall not be included in a determination of an employee's total compensation for the purposes of this subdivision are:

(1) employee benefits that are also provided for the majority of all other full-time employees of the political subdivision, vacation and sick leave allowances, health and dental insurance, disability insurance, term life insurance, and pension benefits or like benefits the cost of which is borne by the employee or which is not subject to tax as income under the Internal Revenue Code of 1986;

(2) dues paid to organizations that are of a civic, professional, education, or governmental nature; and

(3) reimbursement for actual expenses incurred by the employee which the governing body determines to be directly related to the performance of job responsibilities, including an relocation expenses paid during the initial year of employment .

(Emphasis added).

That amendment became effective on August 1, 1993. See Minn. Stat. 645.02 (1992).

Local units of government are authorized to reimburse officers and employees for expenses

involved in using their personal vehicles on public business. Minn. Stat. § 471.665 (1992) provides:

> Subdivision 1. The maximum amount which shall be paid by any county, home rule charter or statutory city, town, or school district, to any officer or employee as compensation or reimbursement for the use by the officer or employee of the officer's or employee's own automobile in the performance of duties shall be set by the town board or other governing body of the unit in an amount to be determined by the governing body.

> Subd. 2. Except as provided in subdivision 3, the governing body of the city of St. Paul may determine to pay, and in counties having more than 550,000 inhabitants, the county board may determine that the county shall pay a base allowance of $1.50 per day for each day the employee or officer's automobile is officially used. This base allowance shall not be paid for more than 20 days in each month. The minimum base allowance shall be $20 per month for each employee or officer required to have a personal automobile available for official public business and using that automobile for such business periodically throughout the month. If a base allowance is paid it shall be in addition to a mileage allowance which shall not exceed 7-1/2 cents a mile for the first 500 miles in any one month and five cents a mile thereafter.

> Subd. 3. In lieu of the mileage allowance provided in subdivision 1, the governing body or town board of any city, county, town, or school district may pay any officer or employee thereof as compensation or reimbursement for the use by the officer or employee of a personal automobile in the performance of official duties a monthly or periodic allowance; but no allowance in lieu of mileage shall be paid to the members of the governing body or town board except as otherwise provided by special law or home rule charter.

(Emphasis added).

Based upon the above provisions, the $600 per month provided for the administrator would appear to be a monthly payment which would fall within the definitions of "salary and . . . all other forms of compensation" for purposes of computing compliance with the 95 percent limit, unless excluded. There is no suggestion that this benefit is available to all county employees. Thus, exception (1) in section 43A.17, subd. 9 would not apply.

Exception (2) in the same subdivision is plainly inapplicable. The third exception does permit exclusion reimbursement of actual expenses determined by the governing body to be

job-related. However, we cannot conclude based on materials supplied that the $600 per month payment falls in whole, or any definable part, within this exception. While the Administrator's employment agreement speaks in terms of a "mileage allowance," the amount fixed is set in terms of a monthly allowance as authorized by section 471.665, subdivision 3.[2] You note that the amount of a mileage or monthly allowance is largely in the discretion of the governing body and that both subdivisions 1 and 3 indicate that the allowance is to be allowed "as compensation or reimbursement." Thus, you suggest that the amount need not be a reimbursement for specific documented amounts expended by the employee.

We agree that an employee need not normally demonstrate dollar-for-dollar expenditures in order to obtain reasonable mileage or periodic allowances established as authorized by section 471.665. However, in our view, such payments, whether denominated as "compensation" or "reimbursement", to be excluded from salary and other compensation for purposes of computing the salary cap, still must be limited to payment for the reasonable expenses associated with use of the employee's personal automobile for official duties. In Op. Atty. Gen. 161 b-12, Jan. 24, 1989, we concluded that a school district was not authorized to provide its superintendent with an automobile for both business and personal use. In reaching that conclusion, we emphasized that section 471.665, subd. 3 authorized a periodic allowance only for use of an employee's vehicles "in the performance of official duties." Thus, we concluded that subsidizing both business and personal automobile use was not permitted. See also Ops. Att. Gen. 359b, October 24, 1989 (clarifying the January 24, 1989 holding) and 104a-8, June 4, 1953 (Deputy Sheriff not entitled to car allowance for month when no duties were performed). "But see, Op. Atty. Gen. 166b-4, January 24, 1989, where

---

2. Subdivision 2, which could also be applied by Hennepin County, would not result in a payment of $600 in any month unless the employee's automobile use on official business exceeded 10,000 miles.

we concluded that a school district could not pay a "housing allowance" in addition to authorized salary, but it could provide money for housing as part of total salary.

While it is perhaps possible that the $600 per month allowance provided to the administrator could reflect a good faith determination of the portion of reasonable ownership and maintenance costs which are directly related to official use of the vehicle by the administrator, there are no facts submitted which either compel or support such a conclusion. Neither the agreement itself nor the June 29, 1993 memorandum fixing the amount of the allowance, makes any distinction between business and personal use, nor do the documents provide any mechanism for apportioning such use. Nor does there appear to be any formal determination by the governing body concerning these matters. Rather, the agreement merely provides an allowance for the "acquisition cost, insurance, maintenance and operation of an automobile."

The implication is that the allowance is intended to subsidize the administrator's ownership of a personal automobile without specific regard to the amount of personal use in relation to business use to which the vehicle is put. Your statement that section 471.666 (Supp. 1993) imposes "severe" restrictions on the use of a county-owned vehicle which might be provided to the administrator also suggests that substantial personal use of the subsidized automobile may, in fact, be contemplated by the agreement.[3]

As noted in the previous opinions cited above, it has been our view that neither Minn. Stat. § 471.665, nor general authority to compensate, authorizes a unit of local government to provide compensation or reimbursement for personal use of an automobile in addition to maximum authorized salary. For purposes of applying the 95 percent "salary" cap, that principle is also emphasized in Minn. Stat. § 43A.17, subd. 9 (Supp. 1993) which limits

---

3.    In this regard there appears no support for a blanket determination that all use of the automobile "on a 24-hour basis" is job related

expense reimbursement, excluded from salary limitation, to "reimbursement for actual expenses incurred by the employee which the governing body determines to be <u>directly related to the performance of job responsibilities</u> - initial year of employment," (emphasis added); and § 471.66 (Supp. 1993) which, as you point out, severely restricts personal use of government-owned vehicles.

While it is true that section 43A.17, subd. 9 as amended grants discretion to the governing body to determine reimbursable expenses, such expenses must still be directly related to job performance. We do not believe that subsidy for personal vehicle use was intended to be within the scope of that discretion.

Consequently, it is our view that, while the matter does involve certain factual issues, the material supplied does not support a determination that the automobile allowance as set forth in the contract and the June 29, 1993 memorandum is based upon, or limited to, reimbursement for the administrator's required use of his own automobile in performance of official duties as required under current law.

## QUESTION TWO

Did the legislature intend that Minn. Stat. § 465.722, which limits the severance pay of certain highly compensated employees, apply retroactively to the Hennepin County administrator's employment agreement entered on June 7, 1993?

## OPINION

We answer this question in the negative.

Sections 465.772 was enacted in Act of May 20, 1993, ch. 315, § 15, 1993 Minn. Laws 1863. The section was effective on August 1, 1993. See Minn. Stat. § 645.02 (1992). According to the facts supplied, the administrators employment agreement was executed on June 7, 1993. As a general proposition, new laws are not construed to have "retroactive effect unless clearly so intended by the legislature." In addition, it appears that the legislature here

did not intend to apply the restrictions of section 465.722 to defeat entitlements to benefits arising under a preexisting contract. Minn. Stat. § 465.722, subd. 3, expressly provides in part:

> Severance pay for a highly compensated employee may exceed an amount equivalent to six months of wages if:
>
> (1) the severance pay benefit is included in an employment contract between the employee and the local unit of government that is in effect on August 1, 1993, and the termination of employment occurs before the expiration date of said contract;

Thus, it seems clear that retroactive effect is not to be given to the six-months pay restriction.

## QUESTION THREE

Must accrued or credited vacation hours which may be used at anytime prior to termination of employment, be included in the determination of the administrator's severance pay for purposes of this statute, section 465.722?

## OPINION

In our view, the contractual provisions do not, on their face, contravene those restrictions. Initially it should be observed that the question of whether any termination allowance or related benefit which may be ultimately provided to the administrator at the time of his termination will exceed the limits of section 465.722 is premature and entirely hypothetical at the present time. That section permits severance pay equivalent to six month's pay or approximately 1,040 hours. At this time it cannot be known either how much "termination allowance" will be payable to the administrator at the time of termination, or how much vacation time, if any, will be available to the administrator should he elect to use such vacation time immediately prior to termination.

Furthermore, the allowance of paid vacation time to be taken, if at all, prior to the termination appears to be a benefit distinct from severance pay as defined by section 465.722

(Supp. 1993). According to subdivision 2 of that section, severance pay includes benefits or compensation payable "upon termination of employment." Also, severance pay which remains unpaid at the time of a terminated employee's death is payable to the decedent's named beneficiary or estate. As you have described the contract with the administrator, all vacation time permitted. whether from the initial balance granted or from hours subsequently accrued, must actually be taken prior to termination of employment. Should the administrator die or otherwise terminate employment prior to using such vacation time, it would be lost.

Section 465.722, subd. 2 itself appears to recognize a distinction between liquidation of leave balances and severance pay in providing that "severance pay shall not include payments for accumulated vacation. . . ."

Thus, the provision for vacation time in general is distinguished from the concept of severance pay as defined by statute. If cash payments for accrued vacation time are not considered severance, a fortiori vacation actually taken should not be included. This conclusion is consistent with previous opinions of this office which have drawn a distinction between the use of vacation and the right to be paid for unused vacations. See, e.g., Op. Atty. Gen. 125-a-33 August 24, 1951 (no implied authority to pay estate of deceased officer for unused vacation); 107-A-3, March 20, 1979 (no authority under prior statute to provide payment for unused vacation upon retirement). Cf. Minn. Stat. § 43A.17, subd. 8 (1992) which prohibits employee conversion of vacation to cash prior to separation from service.

Thus, while circumstances may arise in which the granting of unreasonably large vacation allowances to be converted to cash upon termination could be viewed as contrary to

the intended spirit of section 465.722 (Supp. 1993); we cannot say that paid vacation actually taken prior to termination can be construed as severance pay as defined therein.

Best regards,

HUBERT H. HUMPHREY III
Attorney General

.ez6